MARLAR *v.* BILL *et al.*

*(Jackson,* April Term, 1943.)

Opinion filed February 5, 1944.

ULYSSES A. BURGESS, of Memphis, for plaintiff in error.

MARION G. EVANS, of Memphis, for defendants in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is an action brought in the General Sessions Court to recover damages on a charge of assault and battery and illegal search of the person. Billy Marlar, a boy between ten and eleven, resides with his mother in Memphis and was attending a public school, of which Miss Bill was Superintendent, and he was in the class room of Miss Browning. They are both experienced teachers of excellent reputation. The boy violated a school regulation in going into the class room during recess and raising the windows. When asked about it, upon information that he had been in the room, the boy at first denied it, but when confronted with two other pupils who had seen him, he confessed. The teacher, apparently attaching more importance to his falsehood than to the original offense, first reproached him and then turned him over to the Superintendent for punishment. She inflicted slight punishment with a ruler.

It appears that incidentally a dime was missing and the boy's pockets were examined to see if he had the money. The teacher explained that she really examined his clothing not so much to find the money, but to vindicate the boy from the charge or suspicion which rested on him just at that time because of his having committed the other offense and falsified about it. She disclaimed being

particularly interested in finding the dime. In fact she did not know to which of the pupils the dime belonged. However, counsel in this case made much of this feature.

The Court of General Sessions dismissed the case and the Circuit Judge, sitting without a jury and hearing the witnesses testify, also dismissed. The Court of Appeals, in an opinion by Judge BAPTIST, has affirmed, concurring with the Trial Judge that the evidence affords no basis for a recovery, that the teachers acted with reasonable judgment and upon reasonable cause, without malice and for the good of the child, as well as the school.

The petition filed in this Court complains of this finding in general terms, but appears particularly to stress the dime incident in an attempt to bring the case within the holding in *Phillips* v. *Johns*, 12 Tenn. App., 354, *certiorari* denied by this Court, in which case the Court of Appeals found evidence for the plaintiff to go to a jury, largely upon the theory that the main object of the search complained of in that case of a young girl was to benefit personally a teacher who had lost $21. The Court of Appeals distinguishes that case quite clearly on its facts and as to the principle involved. Here, as above noted, the proof indicates a primary purpose to clear from suspicion and thus benefit the pupil.

The opinion quotes extensively from 24 Ruling Case Law, p. 638, Corpus Juris, Volume 56, pp. 852 and 855, and other authorities, including the opinion of Judge FREEMAN in one of our few reported cases, *State* v. *Von Stranz*, 1 Shannon Cas., 591, and expressions in *Anderson* v. *State*, 40 Tenn., 455, 75 Am. Dec., 774. All authorities seem to agree upon the general principle that the teacher stands in the stead, in a somewhat limited sense, of the parent, *in loco parentis*, and may exercise such powers of

control and correction, including physical punishment, as may be reasonably necessary. Of course, there must be no malice and there must be reasonable ground and the punishment must not be excessive, but commensurate only with the offense.

The following quotation from R. C. L. above cited well states the general rule which we approve, and which is in accord with the holdings of this Court, above cited:

"A teacher is responsible for the discipline of his school, and for the progress, conduct, and deportment of his pupils. It is his imperative duty to maintain good order, and to require of his pupils a faithful performance of their duties. To enable him to discharge these duties effectually, he must necessarily have the power to enforce prompt obedience to his lawful commands, for which reason the law gives him the power, in proper cases, to inflict corporal punishment on refractory pupils, and this is true in private as well as in public schools. The schoolmaster's authority is sanctioned, it seems, practically, and judicially, on the same ground as the right of a parent to chastise his child. Indeed, it is said that for this purpose he represents the parent and has the parental authority delegated to him; that he stands *in loco parentis*. But this is true only in a limited sense. He has no general right to chastise for all offenses, as has the parent. His right is restricted to the limits of his jurisdiction and responsibility as a teacher. Also the power to inflict punishment thus delegated to and vested in the school teacher is not the full extent of the parents' right because the power of correction, vested in parents, is little liable to abuse, being continually restrained by natural affection, and the school teacher, of course, has no such natural restraint, and, therefore, must be limited

to temporately exercising the power to inflict such punishment as is necessary to answer the purposes for which he is employed.''

And, again, at 24 R. C. L., p. 641, Sec. 100, under the head of Civil Liability of Teacher, it is said:

''Where the punishment is moderate and is inflicted with a proper instrument the teacher is, as a rule, not liable civilly for assault and battery. It is ordinarily enough for the teacher to be able to say that the punishment administered was moderate, that it was not dictated by any bad motive, and that it was such as is usual in the school and such as the parent of the child might expect that the child would receive if it did wrong.''

We have, as indicated, a concurrrent finding on the facts and we think the record fully sustains the judgment of the lower Courts and the writ must be denied.